UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THOMAS JAMES JOHNSON,

                          Plaintiff,              06-CV-6397T

              v.                                  **DECISION**
                                                  **and ORDER**
MICHAEL J. ASTRUE,
Commissioner of Social Security

                          Defendant.

_____


                     <u>**INTRODUCTION**</u>

     Pro Se Plaintiff Thomas Johnson ("Johnson" or "Plaintiff"),
brings this action pursuant to Titles II and XVI of the Social
Security Act, claiming that the Commissioner of Social Security
("Commissioner" or "Defendant") improperly denied his application
for disability insurance benefits ("DIB") and Supplemental Security
Income ("SSI") payments.  The plaintiff's thirty-page handwritten
memorandum is construed to move this court to reverse and remand
for calculation of benefits.  The Commissioner also moves this
court to reverse but requests a remand for further proceedings,
arguing that: (i) the ALJ's assessment of the Plaintiff's residual
functional capacity ("RFC") was not supported by substantial
evidence; (ii) the ALJ's analysis at step five of the sequential
evaluation was flawed; and (iii) the record does not compel a
finding of disability.  The issue before this court, therefore, is
whether the record contains persuasive proof of disability such

                          Page -1-

that further evidentiary proceedings would serve no further purpose. See Carroll v. Secretary of Health and Human Serv., 705 F.2d 638, 644 (2d Cir. 1981).

## BACKGROUND

On March 31, 2003, Plaintiff Thomas Johnson applied for DIB and SSI benefits claiming that he became disabled on October 1, 1992 due to schizophrenia (paranoid type), hepatitis B, epilepsy, depression, anemia, back pain due to pancreatitis, and emphysema (Tr. 63, 83). Johnson was 43 years-old with a high school education at the time of his application (Tr. 63).

The Social Security Administration ("SSA") initially denied Johnson's application. He thereafter requested an administrative hearing which was conducted on November 30, 2005 by ALJ James S. Feight. The ALJ found Johnson not to be disabled on December 29, 2005.

Johnson appealed the ALJ's decision to the Social Security Appeals Council, which denied his request for review on August 25, 2006. Johnson had prematurely filed this action before the Council issued its decision, but he then timely filed the Council's decision with the District Court on September 29, 2006, allowing this action to proceed on the merits. The record is complete for review pursuant to Title 42, Section 405(g) of the United State Code.

## DISCUSSION

### I.   JURISDICTION AND SCOPE OF REVIEW

Title 42, Section 405(g) of the United States Code grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. Mathews v. Eldridge, 424 U.S. 319, 320 (1976). Additionally, Section 405(g) directs that the District Court must accept the Commissioner's findings of fact if those findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Section 405(g) thus limits this court's scope of review to two inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence).

Both Plaintiff and Defendant move for judgment on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure. Section 405(g) provides that the District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.S. § 405(g) (2007). Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

A District Court should order payment of Social Security disability benefits in cases where the record contains persuasive proof of disability and remand for further evidentiary proceedings would serve no further purpose. See Carroll, 705 F.2d at 644. The goal of this policy is "to shorten the often painfully slow process by which disability determinations are made." Id. Because this court determines that the record contains substantial evidence to support a finding of disability, judgment on the pleadings is hereby granted for the plaintiff.

## II.   STANDARD FOR ENTITLEMENT TO SOCIAL SECURITY BENEFITS

Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ..."   42 U.S.C. §§ 423(d)(1)(A) (concerning Old-Age, Survivors', and Disability Insurance ("OASDI")); 42 U.S.C. § 1382c(a)(3)(A) (2004) (concerning SSI payments).   An individual will only be considered "under a disability" if his impairment is so severe that he is both unable to do his previous work *and* unable to engage in any other kind of substantial gainful work that exists in the national economy.   §§ 423(d)(2)(A) and 1382c(a)(3)(B).

"Substantial gainful work" is defined as "work that exists in significant numbers either in the region where the individual lives or in several regions of the country."   Id.   Work may be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if work responsibilities are lessened from previous employment.   20 C.F.R. § 404.1572(a) (OASDI); 20 C.F.R. § 416.972(a) (SSI).   Work may be considered "gainful" if it is the kind of work usually done for pay or profit, whether or not a profit is realized.   §§ 404.1572(b) and 416.972(b).   Furthermore, "substantial gainful work" is considered available to an individual regardless of whether such work exists in his immediate area,

whether a specific job vacancy exists for him, or whether he would be hired if he were to apply for work.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).  As discussed in section III of this Decision, the ALJ's finding that the plaintiff could engage in substantial gainful work is not supported by substantial evidence in the record as a whole.

**A.    The SSA's Five-Step Disability Evaluation Process**

When a claimant requests a Social Security disability hearing before an Administrative Law Judge, SSA regulations require the ALJ to perform the following five-step sequential evaluation:

(i)     if the claimant is performing substantial gainful work, he is not disabled;

(ii)    if the claimant is not performing substantial gainful work, his impairment(s) must be "severe" before he can be found to be disabled;

(iii)   if the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry

(iv)    if the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled;

(v)     even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).  The ALJ in this case performed the required five-step evaluation and determined: (i) that the plaintiff had not engaged in substantial gainful employment since October 1, 1992; (ii) that the plaintiff's combination of conditions were considered "severe" under §§ 404.1520(c) and 416.920(c); (iii) that the plaintiff's conditions - either alone or in combination - did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (iv) that the plaintiff was unable to perform his past relevant work as a laborer in the construction industry; and (v) that the plaintiff retained the residual functional capacity ("RFC") to perform light, unskilled jobs which existed in significant numbers in the national economy.  As discussed in section III of this Decision, the ALJ's finding adverse to the Plaintiff in step (iii) of the evaluation process [that the plaintiff's condition did not equal a listed impairment] was not supported by substantial evidence in the record as a whole.

### B.   Regulatory Standard for Evaluating Schizophrenia

In step (iii) of the five-step evaluation, schizophrenia will qualify as a "listed impairment" if there is "medically documented persistence, either continuous or intermittent, of ... delusions ... hallucinations ... or ... emotional withdrawal and/or isolation ... resulting in at least two of the following:

  −  Marked restriction of activities of daily living; or

> – Marked difficulties in maintaining social functioning; or
>
> – Marked difficulties in maintaining concentration, persistence, or pace; or
>
> – Repeated episodes of decompensation, each of extended duration..."

20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.03A, 12.03B. If subsections A and B of § 12.03 are not satisfied, subsection C provides that schizophrenia will still qualify as a listed impairment if there is:

> Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> – Repeated episodes of decompensation, each of extended duration; or
>
> – A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> – Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

§ 12.03C. This court finds that the plaintiff's schizophrenia satisfies the requirements of subsections A and B because: (1) there is substantial evidence in the record of medically documented persistence of delusions, hallucinations, and emotional withdrawal/isolation; (2) the plaintiff's difficulties in

maintaining social functioning are marked; and (3) the plaintiff has marked difficulty with concentration, persistence, and pace.

**C.   The Plaintiff's Schizophrenia Qualifies as a "Listed Impairment," Thereby Ending the Five-Step Disability Evaluation at Step (iii).**

The plaintiff's schizophrenia qualifies as a "listed impairment" under § 12.03 because there is medically documented persistence of delusions, hallucinations, and emotional withdrawal which result in difficulties with social functioning, concentration, persistence, and/or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.03A, 12.03B.

> 1.   The Record Contains Substantial Evidence Supporting the Plaintiff's Medically Documented Persistence of Delusions, Hallucinations, and Emotional Isolation.

Extensive documentation of the plaintiff's psychosis begins in 2001, and his symptoms appear to date back to at least 1989 (Tr. 23, 159-62, 175-78, 180-81, 184-85, 188, 190, 269-73). He was reportedly kicked out of school in 1977 but subsequently obtained a GED (Tr. 188). He has admitted that a voice sometimes tells him to do bad things, e.g. hurt himself, but he often minimizes the importance of his auditory hallucinations, stating that they are "not a problem" (Tr. 183). Delusional thoughts, paranoia, and auditory hallucinations were reported by medical professionals on 06/14/01, 02/12/03, 04/16/03, 06/05/03, and 09/16/03 (Tr. 161-62, 175, 180-83, 188-190, 237-38). From April through September of

2003, records from Unity Health System indicate that the plaintiff was seen 25 times (Tr. 235-51).  Throughout this period, the plaintiff seemed primarily concerned with seizures that he claimed to have frequently, but which were never substantiated.  Id.  His appearance and behavior at these appointments varied, but he was consistently reported to appear anxious with blunted affect.  Id. During some appointments he would constantly talk to himself while in others he appeared to be fine.  Id.  Overall, psychosis or outright schizophrenia was diagnosed or suspected at least eight times in the record (Tr. 161, 177, 184, 185, 190, 239, 269, 273).

The record also indicates that the plaintiff is emotionally withdrawn and/or isolated.  He is an introvert and a "loner" with no friends or associates (Tr. 175).  His affect is often reported as "flat," "restricted," or "anxious" with fair to poor eye contact (Tr. 242-48).  He has been described as angry and, in February 2003, social and occupational dysfunction were reported (Tr. 166, 175, 243).  On one of the plaintiff's better days in July 2003, it was noted that he was engageable, cooperative, and was calmer than usual, but that he "often is very angry and tries to intimidate [people] into what he wants done" (Tr. 242).

Because the record shows medically documented persistence of emotional isolation, delusions, and hallucinations, the plaintiff's schizophrenia will satisfy the requirements of § 12.03 if two of four functional limitations exist:

—   Marked restriction of activities of daily living; or

—   Marked difficulties in maintaining social functioning; or

—   Marked difficulties in maintaining concentration, persistence, or pace; or

—   Repeated episodes of decompensation, each of extended duration

20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.03A, 12.03B.  The ALJ concluded in his decision that the plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, and no episodes of decompensation (Tr. 19). According to the ALJ, therefore, none of the functional criteria satisfied the "marked" threshold.  Id.

2.   The Record Shows that the Plaintiff Suffered Marked Difficulties in Maintaining Social Functioning.

SSA regulations specify that "marked" means:

...more than moderate but less than extreme.  A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the] ability to function independently, appropriately, effectively, and on a sustained basis.

§ 12.00C; see also 20 C.F.R. §§ 404.1520(a) and 416.920(a).  The record in this case amply indicates that the plaintiff has experienced "marked" difficulties in maintaining social functioning and in maintaining concentration, persistence, and/or pace.

The ALJ found the plaintiff's social functioning difficulties to be "mild" because the plaintiff is not aggressive toward others,

is occasionally engageable and cooperative, and is able to get along with his mother (Tr. 19). In its motion, the Commissioner of Social Security admits that "treating records show ample difficulty in [the] plaintiff's social functioning ... and do not support the ALJ's conclusion that [the] plaintiff possessed only "mild" difficulties in maintaining social functioning" (Def.'s Mem. at 6).

The Commissioner's memorandum points out that the basic mental demands of paid, unskilled work include the ability to respond appropriately to supervision, co-workers, and usual work situations. SSR 96-9p; see id.; see also SSR 85-15. This includes the ability to respond appropriately on a sustained basis (8 hours per day / 5 days per week), as well as deal with changes in a routine work setting. SSR 96-9p. Here, the record shows that the plaintiff lacked the ability to respond appropriately to work situations on a sustained basis. He was referred to employment counseling because he was unable to hold a job, he had a history of working for less than one day and then being let go, and he would reportedly become upset if co-workers tried to be friendly (Def.'s Mem. at 7; Tr. 175, 179, 182). In August 2002, the plaintiff's primary care physician noted that the plaintiff was "not cooperative" and needed a psychiatric evaluation (Def.'s Mem. at 7; Tr. 167). In September 2002, the plaintiff refused examination and declined to discuss any matters with his primary care physician (Def.'s Mem. at 7; Tr. 166). Even the plaintiff's relationship

with his mother was strained.  When the plaintiff was 42 years-old, his mother wanted him to move out of her home because she was "tired of the situation" with him shouting, pacing, and talking to people who weren't there (Tr. 169).  She stated that she felt like she had "a 12 year-old for a child."  Id.  All of this is consistent with the ALJ's finding that the plaintiff suffered from severe schizophrenia, paranoid type (Tr. 18).  But none of the above behaviors or tendencies is consistent with the ALJ's finding that the plaintiff's social difficulties constituted a "mild" impairment.  Individuals with paranoid tendencies can be expected to experience, at least, moderate difficulties in relating to coworkers or supervisors, or in tolerating normal work pressures. SSR 85-16.

3.  <u>The Record Shows that the Plaintiff Suffered Marked Difficulties in Maintaining Concentration, Persistence, and/or Pace</u>

The ALJ states in his decision that the plaintiff has concentration and focus difficulty, non-specific paranoia with ruminating thoughts, and tangential thought processes (Tr. 19).  In fact, the decision characterizes the plaintiff's difficulties in maintaining concentration, persistence, and pace as his most severe functional limitations under § 12.03B (Tr. 19) (finding these difficulties to be "moderate" while finding the plaintiff's other functional limitations to be "mild" or nonexistent).

The plaintiff has demonstrated a habit of failing to follow through with medical appointments, leaving before they are complete and refusing to sign paperwork (Tr. 156, 159, 166-67).  Progress notes from Unity Health System repeatedly documented the plaintiff's tangential thoughts and it was noted that he consistently talked to himself throughout several of his appointments (Tr. 236, 238, 243, 245, 246, 251).  Though Dr. Lisa Slimmer, M.D., reported that the plaintiff appeared to be verbally responding to his auditory hallucinations, he would deny this and state that he was merely "thinking out loud" (Tr. 180).

### D.   Impact of Plaintiff's Substance Abuse

The Social Security Act states, "An individual shall not be considered to be disabled for [the] purposes of this title if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. 423(d)(2)(C).  The relevant inquiry in determining whether substance abuse is a "material contributing factor" is whether an individual would still be disabled if he were to stop using alcohol and/or drugs.  20 C.F.R. §§ 404.1535(b), 416.935(b).  As discussed in Section II-C and Section III of this Decision, this court finds that the plaintiff's drug and alcohol abuse do not preclude a grant of Social Security disability benefits because the plaintiff's severe schizophrenia is independently disabling.

### E.   Evaluating Credibility of Claimant Testimony

An ALJ must consider a claimant's subjective complaints of pain and other limitations when making a determination of the claimant's residual functional capacity ("RFC").   20 C.F.R. § 404.1529; SSR 96-7p.  An ALJ is not permitted to find a claimant incredible solely because the severity of his subjective complaints is not supported by objective medical evidence.  Id.  However, the ALJ may evaluate the credibility of a claimant together with the medical findings and other evidence in determining the true extent of the disability alleged by the claimant.  Pietrunti v. Director, 119 F.3d 1035, 1042 (2d Cir. 1997).

As discussed in Section II-C and Section III of this Decision, the ALJ's determination that the plaintiff's allegations were "not entirely credible" is supported by the record.   However, substantial medical evidence indicates that this plaintiff is a schizophrenic.  He denies the severity of his mental problems and argues, both in his testimony and memorandum, that his inability to hold a job has been due to a plethora of mild physical ailments which he claims are "seriously fatal."  The plaintiff suffers from delusions, auditory hallucinations, and paranoia.  His credibility is therefore not an issue because the medical evidence in the record amply supports a finding of disabling schizophrenia, and truth is an illusive term for the schizophrenic.

## III. DISCUSSION OF THE EVIDENCE

**A.    By Concentrating on the Plaintiff's Physical Ailments at the Administrative Hearing, The ALJ Did Not Properly Evaluate the Severity of the Plaintiff's Schizophrenia.**

In the plaintiff's SSA disability report, when asked, "What are the illnesses, injuries, or conditions that limit your ability to work," the plaintiff listed schizophrenia along with his other alleged impairments (i.e. Hepatitis B, epilepsy, depression, anemia, back pain due to pancreatitis, and emphysema) (Tr. 83). Yet the plaintiff denied having mental problems in his testimony before the ALJ (Tr. 330). Given this denial and the plaintiff's seemingly coherent testimony, the ALJ concentrated on the plaintiff's physical impairments during questioning (Tr. 318-33). However, this court finds that the severity of the plaintiff's schizophrenia was masked at the time of the hearing. As a prominent psychology textbook notes:

> Clinical manifestations of schizophrenia and schizophreniform disorders are diverse and can change over time... [While] many symptoms are obvious, such as hallucinations, others such as affective blunting or incongruity are relatively subtle and can be easily missed by a casual observer.

The American Psychiatric Publishing Textbook of Clinical Psychiatry, Ch. 9 (Robert E. Hales & Stuart C. Yudofsky eds., 4th ed. 2002) *available at* http://www.psychiatryonline.com /content.aspx?aID=73297&searchStr=schizophrenia .

Discussion of the plaintiff's physical ailments dominates the hearing transcript (Tr. 318-33). Deliberation regarding the

plaintiff's resolved Hepatitis B alone takes up five of the transcript's pages (Tr. 323-25, 331-32). The ALJ and medical expert were drawn into a polite argument with the plaintiff (who testified via video conference) over Hepatitis lab results and the significance of antibodies versus surface antigens (correlating with active versus resolved Hepatitis B). Id. The plaintiff was not represented by an attorney, did not understand the medical expert's testimony, and continued to press his resolved Hepatitis B as his primary disability. Id. Although the ALJ eventually cut this debate short and questioned the plaintiff about his daily activities, this new line of questioning focused on the plaintiff's alleged back problems and breathing difficulties due to smoking (Tr. 326-30). Towards the end of these questions, and shortly before the debate about Hepatitis resumed, the ALJ asked, "...you're claiming then today that it's because of your *physical* problems that you're disabled[?]," to which the plaintiff replied, "Right" (Tr. 330) (emphasis added).

Given the difficulty of questioning a schizophrenic claimant via video teleconference who convincingly denies mental problems, and given the plaintiff's insistence on arguing his myriad physical limitations, the ALJ understandably overlooked the severity of the plaintiff's mental disorder.

B.   **The ALJ Discounted the Plaintiff's Schizophrenia Against the Clear Weight of Evidence in the Record.**

In his detailed, fourteen-page decision, the ALJ shows that he was influenced by the plaintiff's misleading testimony at the administrative hearing.  On page seven the ALJ states:

> The claimant testified that he feels that if he can start physical therapy in six-eight months he should be able to go back to work and at least put in four-six hours a day and he further testified that he has no mental health problems.   [This]  supports  a  conclusion  that  the claimant's impairments do not impose limitations to such a degree as to be work-preclusive...

(Tr. 21).  In spite of the plaintiff's testimony, the ALJ chose to spend several paragraphs addressing the plaintiff's mental health problems, but these paragraphs emphasize the plaintiff's normal motor skills and other neurological test results while minimizing or dismissing clear indications of schizophrenic symptoms (Tr. 18-19, 20, 23-24).  Relying on rigid test results, however, is not proper in evaluating schizophrenia.  From the Hales psychiatry text:

> Schizophrenia remains a clinical diagnosis that rests on historical  information  and  a  careful  mental  status examination,  and  there  are  no  predictable  laboratory abnormalities that are diagnostic of the disorder.

Textbook of Psychiatry, Ch. 9 (Hales ed., 2002).

The ALJ acknowledges in his decision that the plaintiff has a documented history of mental health issues, even reportedly being hospitalized for delusional thoughts in 1989 (Tr. 23).  During this reported in-patient episode at Strong Memorial Hospital, the

plaintiff apparently refused to take his medication and, after discharge, never returned for treatment (Tr. 180-81; see also Tr. 162, 175-76, 188). The plaintiff's mother also contacted Highland Hospital's Comprehensive Psychiatric Emergency Program in June 2001 because of the plaintiff's reportedly psychotic behaviors (Tr. 160, 162). While at Highland, the plaintiff first allowed himself to be examined and then refused further treatment or cooperation (Tr. 159). The specialist, therapist, and team leader noted that the plaintiff appeared resistant to treatment and that, although he did not seem dangerous, he did exhibit "some delusional thinking" (Tr. 161).

Apart from these two hospitalizations, psychiatric evaluations from Unity Health System twice diagnosed the plaintiff as "Schizophrenic, Paranoid Type" (Tr. 177-78, 184-85). Dr. Darrick J. Alamo, M.D. of Unity Neurology Group examined the plaintiff in 2003 and stated that although he was uncertain about a possible seizure disorder, his impression was that the plaintiff was schizophrenic (Tr. 269-73). Dr. John Thomassen, PhD., also evaluated the plaintiff in 2003 and though he refrained from an outright schizophrenia diagnosis, he listed "Psychotic Disorder, NOS" and "Personality Disorder, NOS with schizoid and schizotypal traits" (Tr. 190).

The only doctor in the record who doubted the plaintiff's schizophrenia was Hillary Tzetzo, a reviewing psychiatrist who

never examined the plaintiff (Tr. 254-268).  Her objections related to the plaintiff's alcoholism and the absence of documented medical treatment. (Tr. 266-68).  But the record indicates that the absence of antipsychotic treatment in this case has been due to the plaintiff's belligerence rather than any lack of diagnostic certainty on the part of his doctors (Tr. 245; see also Tr. 162, 175-76, 177-78, 180-81, 184-85, 190, 269-73).

Under the treating physician rule, the opinions of Drs. Alamo and Thomassen should have been given more weight than the reviewing opinion from Dr. Tzetzo because their opinions were supported by substantial other evidence in the record.  See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (concerning OASDI and SSI payments respectively).  It is also noteworthy that the medical expert at the administrative hearing refused to testify regarding the plaintiff's schizophrenia because it was outside of his area of expertise (Tr. 18, 323).  Nevertheless, the ALJ concluded that the plaintiff's schizophrenia was not a "listed impairment" despite the opinions of multiple physicians in the record indicating that the plaintiff suffered from the condition; despite the poor prognosis by Dr. Thomassen; and despite the great weight of evidence showing persistent delusions, hallucinations, emotional withdrawal and isolation, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, and pace.

## **CONCLUSION**

This court finds that the Commissioner's decision was not supported by substantial evidence.  The record contains persuasive proof of disability such that further evidentiary proceedings would serve no further purpose.  I therefore grant judgment on the pleadings in favor of the plaintiff and remand this matter to the Social Security Administration for calculation of benefits.

ALL OF THE ABOVE IS SO ORDERED.


                              s/Michael A. Telesca
                           MICHAEL A. TELESCA
                        United States District Judge


Dated:     Rochester, New York
           June 27, 2007